In re LEE WAY HOLDING COMPANY, Debtor.

Frederick M. LUPER, Chapter 11 Trustee, et al., Plaintiffs,

v.

BANNER INDUSTRIES, INC., et al., Defendants.

Bankruptcy No. 2–85–00661.
Adv. No. 2–86–0343.

United States Bankruptcy Court,
S.D. Ohio, E.D.

June 21, 1989.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, Chapter 11 Trustee, for the Estate and plaintiff.

Donald R. Harris, Jenner and Block, Chicago, Ill., for plaintiff, Chapter 11 Trustee.

Robert J. Sidman, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for plaintiff, Official Committee of Unsecured Creditors.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for defendants.

Thomas D. Yannucci, Kirkland and Ellis, Washington, D.C., for defendants.

Roger Pascal, Schiff, Hardin & Waite, Chicago, Ill., Russell A. Kelm, Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, for PepsiCo, Inc.

## OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS; LIFTING STAY OF DISCOVERY

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

### I. BACKGROUND

This matter is before the Court on the motion of Banner Industries, Inc. and Plymouth Leasing Company ("Banner") to dismiss the first, second, third, fourth, sixth, seventh and eleventh claims for relief alleged in the first amended complaint filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors ("plaintiffs"), and the plaintiffs' opposition to that motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. The following opinion and order constitutes findings of fact and conclusions of law.

### II. STATEMENT OF FACTS

The claims in this proceeding arise from the relationship between Banner, a holding company, and Commercial Lovelace Motor Freight ("CL"). CL was a wholly owned subsidiary of Banner from 1969 to 1983. Banner acquired 100% of CL's stock in 1969 and was CL's sole stockholder until March of 1983. At that time, a little over 50% of CL's stock was transferred to its employees through an Employee Stock Ownership Plan ("ESOP") established by Banner. Banner further reduced its ownership interest in CL by 10% in 1983. In 1984, CL acquired Lee Way Motor Freight, Inc. ("Motor Freight") from PepsiCo, Inc. ("PepsiCo"). In early 1985, CL merged with Motor Freight to form Lee Way Holding Company, the debtor herein. The debtor filed its petition for relief under Chapter

11, Title 11 of the United States Code on March 7, 1985.

On December 7, 1986, the Official Committee of Unsecured Creditors ("Committee") and the debtor filed this action against Banner. On January 22, 1987, the Court appointed a trustee in this proceeding. On November 18, 1987, the Committee and the trustee filed their First Amended Complaint and Objection to Claims of Banner Industries, Inc. and Plymouth Leasing Company, which complaint is the subject of this motion to dismiss.

During the time this motion has been pending, Banner filed a motion for a temporary stay of discovery, which motion, after oral hearing, was granted. Subsequent to granting that motion, PepsiCo, an interested party herein, filed a motion requesting that the Court reconsider its decision staying discovery in this action. Pursuant to that motion, and after oral hearing on June 14, 1988, the Court amended its order entered May 19, 1988 staying discovery so as to require Banner to provide any and all discovery that it has produced from litigation in the cases of *Courtney v. PepsiCo, Inc. v. Banner Industries, Inc.*, Civ. No. 85–449R (W.D.Okla.) and *St. Paul Fire and Marine Insurance Co. v. PepsiCo, Inc. v. Banner Industries, Inc.*, No. 85–Civ.–2276 (S.D.N.Y.), as well as from litigation in this district in the case of *PepsiCo, Inc. v. Banner Industries, Inc.*, No. C2–86–1571 (S.D.Ohio). The remaining issues raised by PepsiCo's motion for reconsideration were taken under advisement by the Court.

Recently, the plaintiffs moved the Court for an order lifting the stay of discovery in this case. The defendants opposed this motion and following an oral hearing held April 18, 1989, this matter was also taken under advisement.

### III. STANDARD FOR MOTION TO DISMISS

Banner's motion to dismiss was filed near the time it filed its answer and counterclaim. Thus, at this early stage of the proceedings, the Court is merely evaluating the sufficiency of the plaintiffs' complaint. The plaintiffs' complaint may only be dis-

missed under Bankruptcy Rule 7012 if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–56, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "In determining the motion, the Court must presume all actual allegations of the complaint to be true and all reasonable inferences are made in favor of the nonmoving party." 2A J. Moore and J.D. Lucas, Moore's Federal Practice, ¶ 12.07 (2d ed. 1986). *See also, Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987); *Scheuer* 416 U.S. at 236, 94 S.Ct. at 1686. Yet, the Court is not to presume as true legal conclusions or deductions, or opinions masked as factual allegations. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976).

## IV. FACTUAL ALLEGATIONS

The plaintiffs allege the following facts in their complaint in support of their claims against Banner:

1. At all times from 1969 through March 5, 1983, Banner was the owner of one hundred percent (100%) of the capital stock of CL, a general and special motor carrier of freight.

2. As CL's sole stockholder, Banner derived substantial benefits from CL's operations during the period from 1969 through approximately 1980, including corporate service fees and tax advantages obtained by including CL on its consolidated federal income tax returns.

3. In order to derive substantial benefits from the operation of CL's business, Banner caused and enabled CL to enter into numerous transactions, including leasing or financing the acquisition of properties in its own name, in aid of which Banner unconditionally obligated itself to pay indebtedness incurred in the name of CL.

4. During the period from 1969 through 1983, Banner unconditionally guaranteed or otherwise made itself liable on the following obligations, among others (the "Banner Guaranties");

(a) Lease dated January 31, 1971 between Harold C. Schott, Howard Vanden Eynden and Charles R. Ault, Trustees of the H.C. Schott Trust (collectively as Lessor), and Commercial Motor Freight, Inc. (as Lessee);

(b) Mortgage Note dated on or about March 19, 1971 from Commercial Motor Freight, Inc. and Banner Industries, Inc. (as Co–Makers) to Shaker Savings Association;

(c) Mortgage Note dated March 19, 1971 from Commercial Motor Freight, Inc. to The Buckeye Savings Association and The Cincinnati Savings Association;

(d) Mortgage Note dated March 19, 1971 from Commercial Motor Freight, Inc., Banner Industries, Inc., William P. Barker and Samuel J. Krasney (as Co–Makers) to First Federal Savings and Loan Association of Defiance;

(e) Lease dated as of December 1, 1975 between the County of Wood, Ohio and Commercial Motor Freight, Inc.

(f) Ten (10) substantially identical Lease Agreements dated on or about January 3, 1977 between M.F. Neimeyer Investment Company, Inc. and various affiliated entities (collectively as Lessors) and Commercial Lovelace Motor Freight, Inc. (as Lessee);

(g) Lease dated September 6, 1978 between the Connecticut Bank and Trust Company, Trustee (as Lessor), and Commercial Lovelace Motor Freight, Inc. (as Lessee);

(h) Lease dated as of June 1, 1979 between the Industrial Development Authority of the City of Kansas City, Missouri, and Commercial Lovelace Motor Freight, Inc.;

(i) Five (5) substantially similar Loan and Security Agreements dated as of Au-

**408**

gust 31, 1979 between the State of Ohio and Commercial Lovelace Motor Freight, Inc.;

(j) Conditional Sales Agreement dated September 26, 1979 by and between DBT Financial Services Corporation and Commercial Lovelace Motor Freight, Inc.;

(k) Liabilities of Commercial Lovelace Motor Freight, Inc. to Transport Insurance Company for insurance premiums which have been guaranteed by letter from Banner Industries, Inc. to Transport Insurance Company dated December 18, 1980;

(*l*) Lease dated January 9, 1981 between The Huntington Leasing Company (as Lessor) and Commercial Lovelace Motor Freight, Inc. (as Lessee);

(m) Loan Agreement and Mortgage dated as of June 1, 1981 between the City of Kokomo, Indiana, and Commercial Lovelace Motor Freight, Inc.;

(n) Master Equipment Lease dated as of July 2, 1981 by and between Manufacturers Hanover Leasing Corporation (as Lessor) and Commercial Lovelace Motor Freight, Inc. (as Lessee);

(*o*) Equipment Lease dated as of July 31, 1981 by and between McCullagh Leasing, Inc., Capital Division (as Lessor) and Commercial Lovelace Motor Freight, Inc. (as Lessee);

(p) Equipment Lease Agreement dated as of December 28, 1981 by and between MDFC Equipment Leasing Corporation (as Lessor) and Commercial Lovelace Motor Freight, Inc. (as Lessee);

(q) Liabilities of Commercial Lovelace Motor Freight, Inc. to System Freight, Inc. which have been guaranteed by letter from Banner Industries, Inc. to System Freight, Inc. dated February 15, 1983.

5. Banner's contingent liabilities on obligations incurred in the name of CL allegedly aggregated approximately $22,000,000.

6. Within the year preceding the filing of the Debtor's Chapter 11 petition, Banner's contingent liabilities as set forth in Paragraph 4 of this complaint were substantially reduced as a result of payments by CL or the Debtor, foreclosures of collateral securing debts Banner had guaranteed, workouts, renegotiations, or other means (the "Reduced Banner–Guaranteed Debt Amount"). The Trustee and the Committee do not at this time know the exact amount of the Reduced Banner–Guaranteed Debt Amount but believe it exceeds $1 million.

7. Commencing in or about 1980 and continuing through 1983, Banner's wholly owned subsidiary CL experienced significant operating losses.

8. During the period from at least 1980 through at least 1983, CL was dependent on financial support from Banner in order to meet its cash needs.

9. As a consequence of CL's deteriorating financial condition during the period from approximately 1980 through 1983, Banner was determined to protect itself against loss or exposure on its contingent liabilities on the Banner Guaranties and other contingent obligations that would arise by virtue of Banner's controlling stock ownership if CL were unable to continue its business operations.

10. In or about 1982, Banner caused title to several parcels of improved real property owned by CL (the "Plymouth Properties") to be transferred to defendant Plymouth, wholly owned subsidiary of Banner.

11. Plymouth has no offices apart from those of Banner. Plymouth has no payroll and, aside from its officers, no employees.

12. Despite Banner's system of intercompany charges for services rendered between companies, Plymouth has not been billed for services that are required to be supplied by Banner or another Banner subsidiary by virtue of the fact that Plymouth has no employees.

13. Banner transferred the improved real estate to Plymouth even though CL required the use of these properties. As a

result, CL was required to lease the Plymouth Properties back from Plymouth at disadvantageous rents.

14. In consideration for such transfers of title, CL received substantially less than the respective fair market values of the Plymouth Properties.

15. On or about March 1, 1983, Banner caused and enabled CL to implement an employee stock ownership plan (the "ESOP"), pursuant to which Banner reduced its capital stock ownership in CL to 49.99%.

16. On or about July 29, 1983, Banner sold 790,000 shares, or 9.98% of CL's outstanding stock, to CL Investors, leaving Banner with 40.01% of the issued and outstanding CL stock.

17. On or about February 25, 1985, Banner sold 400,000 shares, or 5.00% of CL's outstanding stock, to Gerard W. McIntyre ("McIntyre") for $1,250.00 leaving Banner with 35.01% of the issued and outstanding CL stock.

18. The agreement pursuant to which Banner sold stock to McIntyre provided (a) that McIntyre shall not sell or transfer any shares of CL stock to CL or the ESOP; and (b) an option for McIntyre to purchase an additional 1,200,000 shares, or 15.00% of the issued and outstanding CL stock, from Banner for a price of $3,750.00. Thus, Banner ensured that it would always own less than 80% of the issued and outstanding stock of CL not owned by the ESOP. Banner thereby attempted to avoid potentially large pension-fund withdrawal-liability claims.

19. Banner created the ESOP for its own benefit in an attempt to avoid substantial contingent liabilities.

20. Subsequent to the implementation of the ESOP, Banner nevertheless continued to control the Board of Directors of CL.

21. Seven members were appointed or elected to the Board of Directors of CL. Banner appointed or elected three of the seven directors of CL. Christopher McCracken, counsel to Banner, Michael Alcox, Vice President of Banner, and Warren Persavich, Secretary of Banner, each served on the board of Directors of CL.

22. The trustee of the ESOP appointed or elected three members of the Board of Directors of CL.

23. The seventh director was the President and Chief Executive Officer of CL, Gerard McIntyre. McIntyre maintained close ties with, and continued to be indebted to, Banner long after he ceased to be a Banner employee.

24. For example, in 1984, two years after McIntyre had become President of CL, Banner financed McIntyre's purchase of a new home.

25. As a result of its allegiance to Banner, the Board of Directors of CL consistently made decisions that inured to the benefit of Banner.

26. On or about March 18, 1983, Banner required and directed CL to enter into an agreement pursuant to which CL agreed to (a) indemnify Banner against any liability it incurred on account of the Banner Guaranties and (b) convey to Banner liens and security interests in and to all of its assets (the "Indemnification Agreement"). As consideration therefor, Banner extended certain accommodations to a third party lender that extended a line of credit to CL.

27. In connection with the Indemnification Agreement, Banner and CL were represented by the same counsel.

28. The Indemnification Agreement, among other things, was an attempt by Banner to ensure that CL would operate its business in a manner designed to protect Banner's interests.

29. Because CL was no longer a wholly-owned subsidiary of Banner subsequent to the implementation of the ESOP, Banner could not automatically include CL on its consolidated tax return.

30. As a consequence thereof, Banner caused CL to enter into a Tax Sharing Agreement, dated June 6, 1983, which was subsequently amended.

31. By virtue of the Tax Sharing Agreement, Banner was able to continue to reap tax benefits from CL similar to those that

existed prior to the implementation of the ESOP.

32. On the eve of the Petition Date, on or about February 27, 1985, Banner caused CL to enter into an amendment to the Tax Sharing Agreement (the "Tax Sharing Amendment").

33. Pursuant to the Tax Sharing Amendment, Banner was purportedly given the right to offset amounts owed to CL against amounts owed by CL in connection with the Banner Guaranties and other liabilities of CL to Banner.

## IV. FIRST CLAIM FOR RELIEF

Banner moves this Court to dismiss the plaintiffs' first claim which is based on a theory of alter-ego. Banner asserts that an action predicated on alter-ego is not a legal or equitable interest of the debtor, and therefore, is not property of the estate under § 541 of the Bankruptcy Code. Banner further contends that under applicable Ohio law, the Chapter 11 trustee and the Official Committee of Unsecured Creditors ("Committee"), the plaintiffs herein, lack standing to assert a claim based on alter-ego. Finally, the defendant argues, in the alternative, that should this Court find that the plaintiffs do have standing to assert the alter-ego claim, the action would be in the nature of a third-party dispute between a nondebtor and a noncreditor, unrelated to the bankruptcy estate, and therefore the Court would not have jurisdiction to adjudicate this claim.

■ A debtor's property rights are determined by state law. *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). Thus, if state law allows a debtor corporation to assert a claim against its shareholders by disregarding the existence of the corporate entity, the claim is property of the estate, and the trustee has standing to assert it. *Pepper v. Litton*, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). In *Mixon v. Anderson (In re Ozark Restaurant Equip. Co., Inc.)*, 816 F.2d 1222 (8th Cir.1987), the court held that the trustee could not bring an alter-ego claim on behalf of the estate's creditors, finding that Arkansas law does not

permit a corporation to bring an alter-ego claim against its principals. *Mixon* at 1225. Other courts, however, have recognized a corporation's power under state law to bring a claim based on alter-ego, and held that claim a right of the debtor that passes to the trustee in bankruptcy. *Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132, 135–36 (4th Cir. 1988) (Virginia law); *S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1152–53 (5th Cir.1987) (Texas law).

In their dispute over whether the trustee can bring the action as successor in interest to the debtor, the parties have squabbled over whether Ohio recognizes an "instrumentality" or "identity" theory of alter-ego. The Court is not concerned with the label attached to the theory under which the cause of action is brought. Of more importance is the fact that Ohio law recognizes a claim based on a theory of alter-ego if the corporation as an entity is "urged to an end subversive of its policy." *State ex rel. Attorney General v. Standard Oil*, 49 Ohio St. 137, 179, 30 N.E. 279 (1892).

Pursuant to Ohio law, a court will disregard the corporate fiction whenever "its retention will produce injustice or inequitable consequences." *Bucyrus—Erie Co. v. General Products*, 643 F.2d 413, 419 (6th Cir.1981). When determining the presence of such consequences, the Court should consider whether:

1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own;

2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act; and

3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Bucyrus—Erie Co.* at 418. While fraud is a factor to be considered, it is not essential. *Id.* at 419. The essential factors, therefore, are control, injury and causation.

This Court is of the opinion that Ohio law establishes the right to a claim based on

theory of alter-ego whenever the corporate fiction, if retained, would result in an unjust or inequitable result. *Bucyrus–Erie Co.* at 419; *Standard Oil* at 139; *Auglaize Box Board Co. v. Hinton*, 100 Ohio St. 505, 518–19, 126 N.E. 881 (1919); *North v. Higbee Co.*, 131 Ohio St. 507, 3 N.E.2d 391 (1936); *E.S. Preston Associates, Inc. v. Preston*, 24 Ohio St.3d 7, 492 N.E.2d 441, 446 (1986); *Cook v. Sears*, 9 Ohio App.2d 197, 223 N.E.2d 613 (1967); *Central Inv. Corp. v. Mutual Leasing Associates, Inc.*, 523 F.Supp. 74 (D.Ohio 1981); *Saeks v. Saeks*, 24 Ohio App.3d 67, 493 N.E.2d 280 (1985).

It would appear therefore under the theories of alter-ego espoused by Ohio law, that a corporation may assert a claim against its principals. It should be noted that in *E.S. Preston Assoc., Inc. v. Preston*, 24 Ohio St.3d at 11, 492 N.E.2d at 446, the Ohio Supreme Court briefly discussed the propriety of disregarding the corporate entity under the facts in that case. Although the case involved a principal seeking to disregard the corporate entity of a wholly-owned subsidiary, the court neither voiced nor noted any objection to that aspect of the facts.

The ability of a trustee or Committee to bring an alter-ego claim has been the subject of considerable dispute. In addition to those cited above, still other courts have found that the trustee has the right in any event to assert an alter-ego claim on behalf of all creditors. *Matter of Kaiser*, 791 F.2d 73, 75 (7th Cir.1986), *cert. denied*, 479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 710 (1986); *In re Western World Funding, Inc.*, 52 B.R. 743, 781 (Bankr.D.Nev.1985); *Koch Refining v. Farmers Union Cent. Exch.*, 831 F.2d 1339, 1346 (7th Cir.1987). As the court noted in *Kaiser*, the trustee stands in the shoes of creditors. As the *Koch Refineries'* court further noted:

> The role of trustee as a representative of the estate, with the capacity to sue and be sued, is defined in section 323 of the Bankruptcy Code. The Code explicitly grants road responsibilities to the trustee in collecting the debtor's assets and dealing with the bankruptcy estate. *See, e.g.*, 11 U.S.C. §§ 704, 721, 724, 725, 363, 364, 365. The trustee of a Chapter 7 debtor ... has the general duties of marshalling all available property, reducing it to money, distributing it to creditors, and closing up the estate ...

The trustee represents not only the rights of the debtor but also the interests of creditors of the debtor. Pursuant to 11 U.S.C. § 544 the trustee, in his capacity as a creditor, may bring suit to reach property or choses in action belonging to the estate that will then be distributed to all creditors. Whether the trustee is representing the estate or "standing in the shoes" of the creditors, he has the duty to marshal the debtor's property for the benefit of the estate, and thus the right to sue parties for recovery of all property available under state law.

The Official Committee of Unsecured Creditors is also empowered to participate in this adversary proceeding. Section 1109(b) of the Bankruptcy Code expressly provides that a creditors' committee "may raise and may appear and be heard on any issue in a case under this chapter." A creditors' committee therefore has the statutory right to intervene in adversary proceedings related to a bankruptcy case. *Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445, 449–57 (3d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983). Moreover, courts have recognized the authority of a creditors' committee to act as a co-plaintiff with a debtor, *Gander Mountain, Inc. v. Impact Industries, Inc. (In re Gander Mountain, Inc.*, 29 B.R. 260, 262–63 (Bankr.E.D.Wis. 1983), or a Chapter 11 trustee. *McCoy v. Just Supply Inc. (In re Enduro Stainless, Inc.)*, Adv. No. 686–00219, slip op. at 5–6 (Bankr.N.D.Ohio Sep. 4, 1986). Since the plaintiffs assert that the Committee's role is purely cooperative, the Court need not address the issue of the Committee's standing to prosecute this claim.

■ The plaintiffs' complaint has stated with sufficient particularity facts necessary to find control, injury and causation, thereby providing the basis for an alter-ego

claim under Ohio law. In summary, plaintiffs' first claim alleges that Banner as the controlling shareholder of CL abused its fiduciary relationship with CL through domination and control, and therefore Banner should be held liable for that abuse to CL and its creditors. Plaintiffs' allegations of breach of fiduciary duty by Banner through the exercise of domination and control over CL to the detriment of CL's creditors provides sufficient facts upon which relief could be granted under Ohio law.

■ Moreover, the Court cannot conclude that recognizing the ability of the plaintiffs to bring an action based on alter-ego would result in a loss of this Court's jurisdiction. A civil proceeding is related to a case under Title 11 whenever the "outcome of the proceeding could conceivably have any effect upon the estate" which is being administered in bankruptcy. *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986). Clearly, the plaintiffs' alter-ego claim affects the debtor's estate. Any recovery by the plaintiffs would inure to the benefit of the debtor's estate and the unsecured creditors.

On the basis of the foregoing, the Court finds that the plaintiffs' complaint states facts sufficient to constitute a claim for relief under Ohio law. Therefore, that branch of Banner's motion seeking dismissal of the first claim of plaintiffs' complaint is denied.

## V. SECOND CLAIM FOR RELIEF

■ Plaintiffs' second claim for relief seeks a declaratory judgment that, on the basis of alter-ego, Banner's assets should be considered as part of the bankruptcy estate. There is no doubt that upon the filing of bankruptcy, an estate is created comprised of all legal or equitable interests of the debtor in property, wherever located. 11 U.S.C. § 541(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Thus, property in which the debtor has an interest, but of which the debtor does not have possession, is considered as property of the estate. *Whiting Pools, Inc.* at 207, 103 S.Ct. at 2314.

Any interest the plaintiffs may have in Banner's assets is conditioned upon the plaintiffs' successful prosecution of an alter-ego claim. If that action is successful, the corporate form will be disregarded, and Banner and CL will be considered as one and the same, with the result being that Banner will be held liable for the CL's obligations. *Bucyrus—Erie Co.* at 419.

In determining whether the plaintiffs' complaint states facts sufficient to withstand a motion to dismiss:

> The crucial question is whether a claim for relief has been alleged or can be construed so as to do substantial justice.

*Shaw v. Easter* (*In re Shaw*), 25 B.R. 418, 421 (Bankr.S.D.Ohio 1982). Furthermore, a claim cannot be dismissed unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The Court is of the opinion that the plaintiffs' complaint states facts sufficient to allege a valid cause of action. The Court does not believe that predication of such a claim on alter-ego is improper. Banner asserts that there can be no action for turnover under § 542 where there is a dispute of ownership of the property. This is simply without merit. Of course, the Court cannot require turnover of property which is not property of the debtor, and the determination of the interest of the estate in the subject property is an integral part of § 542. If the plaintiffs are successful in proving their allegations of their second claim, then Banner's assets will be subject to recovery for the benefit of the debtor's estate. Accordingly, that branch of Banner's motion seeking dismissal of the plaintiffs' second claim for relief is denied.

## VI. THIRD CLAIM FOR RELIEF

Plaintiffs' third claim for relief alleges breach of fiduciary duty by Banner with respect to five separate transactions. Plaintiffs state that Banner was the dominant and controlling shareholder of CL, and therefore had a fiduciary duty to deal fairly and in good faith with CL. Plaintiffs

allege that Banner breached its fiduciary duty by failing to deal fairly and in good faith with CL with respect to the five transactions.

The five transactions constituting plaintiffs' third claim are: (1) the reduction of the amount of Banner's debt guaranties; (2) the transfers of several freight terminal properties from CL to Plymouth; (3) CL's agreements to indemnify Banner for certain payments made by Banner; (4) an agreement to share tax advantages; and (5) an amendment to the Tax–Sharing Agreement.

■ A majority shareholder is a dominant and controlling shareholder who owes a fiduciary duty to deal fairly with the corporation. *Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); *Radol v. Thomas,* 772 F.2d 244 (6th Cir.1985); *Apicella v. PAF Corp.,* 17 Ohio App.3d 245, 479 N.E.2d 315 (1984). In some circumstances, a minority may also be a dominant and controlling shareholder, subject to the same fiduciary duty. *See, generally,* V. Brudney, *Equal Treatment of Shareholders in Corporate Distributions and Reorganizations,* 71 Cal.L.Rev. 1073, n. 2 (1983). For example, a minority shareholder may own only 35% of a corporation's outstanding stock, yet may be the single largest individual shareholder. The question of dominance and control, "a factual one, is what amount of influence [the shareholder] could exert on the corporation by reason of its holdings." *Heckmann v. Ahmanson,* 168 Cal.App.3d 119, 214 Cal. Rptr. 177, 187 n. 7 (1985). When a shareholder is able to determine corporate policy, whether by "assuming management responsibility or by selecting management personnel," the shareholder is deemed to be in control. *In re N & D Properties, Inc.,* 799 F.2d 726, 732 (11th Cir.1986).

■ The Court is satisfied that plaintiffs' complaint alleges with sufficient particularity Banner's purported dominance and control over CL. Banner does not dispute the fact that it owned 100% of CL's stock from 1969 through March of 1983. Plaintiffs have averred that Banner sought to reduce its interest in CL, and established an employee stock ownership plan to so reduce that interest to less than 40%. Plaintiffs also contend that after the employee stock ownership plan was established, Banner appointed three of the seven directors to CL's Board of Directors, and that Banner was able to control and influence the "swing" seventh director. These allegations are sufficient to place Banner on notice as to plaintiffs' cause of action. *Electrical Const. & Maint. v. Maeda Pacific Corp.,* 764 F.2d 619, 622 (9th Cir. 1985).

Moreover, the Court cannot say on the basis of the facts alleged that the plaintiffs would be unable to prove facts to support their claim that Banner breached a fiduciary duty to CL. Under Ohio law, directors have a fiduciary obligation to the corporation, which obligation includes two separate duties: a duty of loyalty and a duty of care. *Radol v. Thomas,* 772 F.2d 244, 256 (6th Cir.1985); Ohio Rev.Code Ann. § 1701.59(B). Clearly, plaintiffs' complaint under claim three states facts sufficient that, when presumed as true, set forth a cause of action against Banner for breach of its fiduciary duty as a dominant and controlling shareholder with respect to the transactions at issue. Accordingly, that branch of Banner's motion seeking dismissal of the plaintiffs' third claim is denied.

## VII. FOURTH CLAIM FOR RELIEF

■ Plaintiffs' fourth claim for relief alleges that Banner guaranteed certain lease and financing obligations of CL, and that those guaranties are in fact contributions to CL's capital. Therefore, the plaintiff contends that Banner's claims against CL for indemnification based on those guaranties must be subordinated to the claims of all other creditors under the absolute priority rule. Also, the plaintiffs state that since the guaranties are capital contributions, they are not mutual with CL's claims against Banner, and therefore cannot be set off against them under 11 U.S.C. § 553.

The plaintiffs' complaint, in connection with its fourth claim for relief, alleges that all of the guaranties were extended during the time when CL was a wholly owned subsidiary of Banner, and at a time when

CL was undercapitalized. The plaintiffs also contend under their fourth claim that Banner dominated and controlled CL, and disregarded CL's separate corporate identity. Plaintiffs state that Banner's guaranties are contributions to capital, and on the basis of a theory of alter-ego, that these guaranties of CL's debts should be reclassified as an equity investment. The trustee goes on to contend that its claim for subordination is based on Banner's position as an insider and fiduciary of CL, and in that position engaged in certain transactions which were unfair to CL and its creditors. Accordingly, the trustee argues that Banner's claims against CL should be subordinated to those of all other creditors in this case.

The Court is of the opinion that the plaintiffs' allegations sufficiently set forth allegations of a history of dominance and control by Banner, disregard of CL's separate corporate identity, and under capitalization, thereby stating a valid cause of action for subordination under 11 U.S.C. § 553. *Pepper v. Litton*, 308 U.S. at 309–10, 60 S.Ct. at 246–47. Accordingly, that branch of Banner's motion seeking dismissal of the plaintiffs' fourth claim of relief is denied.

### VIII. SIXTH CLAIM FOR RELIEF

Plaintiffs allege that CL, after the implementation of the employee stock ownership plan in 1983, was no longer a wholly owned subsidiary of Banner, and therefore Banner could not automatically include CL on its consolidated tax return. In order to continue to reap tax benefits from CL, Banner caused CL to enter into a tax sharing agreement in order to continue to reap tax benefits from CL. The plaintiffs also allege that on the eve of the filing of this bankruptcy, Banner caused CL to enter into an amendment to the Tax Sharing Agreement, by which amendment Banner was given the right to offset amounts owed to CL against amounts owed by CL in connection with the Banner guarantees and with respect to other liabilities of CL to Banner. The plaintiffs state that as a result of the Tax Sharing Agreement, Banner presently owes the debtor the amount of approximately 4.5 million dollars, and re-

quests that this amount be turned over to the estate.

Banner argues that the plaintiffs' sixth claim for relief is improperly brought as a turnover action under 11 U.S.C. § 542, stating that the plaintiffs' action is in the nature of a breach-of-contract claim, which is not a core matter, and over which this Court does not have jurisdiction.

11 U.S.C. § 542(b) provides:

[A]n entity that owes a debt that is property of the estate and that is matured ... shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

■ The key issue in an action brought under 11 U.S.C. § 542(b) is whether or not at the time of the commencement of the case, there was a debt which was matured, payable on demand, or payable on order. *In re R.I. Lithograph Corp.*, 60 B.R. 199 (Bankr.D.R.I.1986). The mere fact that the defendants deny the allegations of the plaintiffs' complaint does not render the plaintiffs' action improper under 11 U.S.C. § 542. *In re Rawson*, 40 B.R. 167 (Bankr. Ohio 1984). Given that the Tax Sharing Agreement was executed in 1983, and an amendment to that Agreement was executed on the eve of the petition date in 1985, the Court is of the opinion that the plaintiffs' sixth claim for relief sufficiently alleges that Banner's obligations under the Agreement had matured and were due at the time the debtor filed its petition for relief. Accordingly, the Court cannot conclude that there is no set of facts under which the plaintiffs could prevail under their sixth claim for relief.

■ Banner also argues that the plaintiffs' cause of action under its sixth claim for relief is a non-core proceeding over which this Court does not have jurisdiction.

The characterization of a related matter as core or non-core determines whether the bankruptcy court is empowered to enter final orders and judgments pursuant to the reference by the United States District Court to the bankruptcy judges. 28 U.S.C.

§ 157(a). If a matter is determined to be a core proceeding under 28 U.S.C. § 157(b)(2), the bankruptcy court may hear it and render a final determination. 28 U.S.C. § 157(b)(1). Otherwise, the bankruptcy court may hear a non-core, related proceeding and submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). The district court may then enter a final order of judgment in the non-core, related proceeding after it reviews de novo those findings to which any party has timely and specifically objected. 28 U.S.C. § 157(c)(1). By consent, the parties may empower the bankruptcy court to enter a final order or judgment in a non-core proceeding, which order or judgment would then be subject to appellate review by the district court, in the same manner as if it had been entered in a core proceeding. 28 U.S.C. § 157(c).

Core proceedings are delineated under 28 U.S.C. § 157(b)(2). This is only a non-inclusive list and no definition of the term "core proceeding" is provided, leaving that to be determined by the courts. Non-core proceedings are also undefined, but generally are considered to be:

> [A]dversary cases or controversies which are triable only by Article III courts or state courts ... they are traditional state common law actions, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law ...

*In re R.I. Lithograph Corp.*, 60 B.R. 199, 203 (Bankr.D.R.I.1986), citing *Willis v. Ryan (In re Bucyrus–Grain Co., Inc.)*, 56 B.R. 204 (Bankr.D.Kan.1986).

This Court has previously held that actions based on turnover to recover monies allegedly due are in the nature of a non-core proceeding. *Stewart v. Strasburger (In re Astrocade, Inc.)*, 79 B.R. 983 (Bankr. S.D.Ohio 1987). The Court is of the opinion that the plaintiffs seek the recovery of monies alleged to be due. Therefore, the Court concludes that the plaintiffs' sixth claim for relief is in the nature of a non-core proceeding.

Yet, this finding does not divest the Court of its jurisdiction over the plaintiffs' sixth claim for relief. The Court may still retain its jurisdiction to hear and to consider the claims under the sixth claim for relief if those claims are otherwise related to a case under Title 11. 28 U.S.C. § 157(c)(1). The court in the case of *In re Bowling Green Truss*, 53 B.R. 391, 394 (Bankr.S.D.Ohio 1985) in addressing what constitutes a "related proceeding", stated:

> A judgment must be made on a case-by-case basis after careful consideration of the facts surrounding both the specific controversy at hand and those generally attending the entire bankruptcy. If an action has a direct and substantive impact on the bankruptcy estate or its administration, then it is related to the bankruptcy case and jurisdiction exists. But if a controversy has only a vague or incidental connection with a pending case, and any impact its resolution may have on the bankruptcy estate is speculative, indirect or incidental, then the matter is unrelated to the bankruptcy case and we would not hear it.

The Third Circuit in the case of *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 999 (3rd Cir.1984) has added that:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ... Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. [Citations omitted].

The plaintiffs have alleged that pursuant to the Tax Sharing agreement, Banner presently owes the debtor the sum of approximately 4.5 million dollars. The plaintiffs' action to recover this amount is in the normal and regular course of their administration of this estate in attempting to recover the most assets possible for the bene-

fit of unsecured creditors. The plaintiffs' success or failure under their sixth claim for relief will have a direct and substantial impact on the total amount of assets recovered for the benefit of unsecured creditors. Accordingly, the Court finds that the plaintiffs' sixth claim or relief, while a non-core proceeding, is related to this case under Title 11, and over which this Court possesses subject matter jurisdiction. On the basis of these findings, that branch of Banner's motion seeking dismissal of the plaintiffs' sixth claim for relief is DENIED.

## IX. SEVENTH CLAIM FOR RELIEF

Plaintiffs allege under their seventh claim for relief that pursuant to the Tax Sharing Agreement dated June 6, 1983, Banner was permitted to withhold $325,000.00 from CL to offset a $300,000.00 advance to CL made in March of 1984. The Amendment to the Tax Sharing Agreement dated February 27, 1985 provides that Banner is permitted to withhold the next $200,000.00 owed to CL to offset an advance in the same amount made during August of 1984. The plaintiffs further allege that the Amendment provided that any amounts Banner owed to CL would be withheld to offset amounts allegedly owed by CL pursuant to leases with Banner, and amounts Banner expended and obligations or liabilities it incurred by reason of the Banner guarantees. The plaintiffs contend that these transactions embodied in the Tax Sharing Agreement, as amended, constitute transfers of the debtor's property to Banner, which transfers constitute a preference under 11 U.S.C. § 547(b) or are otherwise voidable under 11 U.S.C. § 550.

Banner argues that any transfers made were not transfers by the debtor of an interest in its property, but that the Tax Sharing Agreement and Amendments thereto, merely recognized Banner's right to a set-off. Therefore, contends Banner, the plaintiffs' cause of action under their seventh claim for relief must fail.

At issue under the plaintiffs' complaint is whether Banner had a right to a set-off which it could exercise. Should the plaintiffs prevail on their Fourth Claim, then Banner's interest becomes one of equity rather than a claim. Clearly in that circumstance, there would be no right of set-off. Although not as well pled as it might be, the Court is not disposed to dismiss the plaintiffs' claim on such technicality. Furthermore, even if a right to a set-off existed, it is disputed whether the debts claimed to be set-off were mutual under 11 U.S.C. § 553(a). The case of *Western Dealer Management, Inc. v. England (In the Matter of Bob Richards Chrysler–Plymouth Corp., Inc.)* 473 F.2d 262 (9th Cir.1973) presented a factual situation similar to that before the Court. In that case, the court held that the parent corporation is acting as a trustee of a specific trust with regard to any tax refund. The court noted that

"... where the liability of one claiming a setoff arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts and credits does not exist, and such persons may not set-off a debt owing from the bankrupt against such liability." 4 Collier on Bankruptcy (14th ed.) ¶ 68.04[2.1] at 872. *Western Tie and Timber Co. v. Brown,* 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571 (1905); *Bayliss v. Rood,* 424 F.2d 142 (4th Cir. 1970). The rationale of this rule is simply that the liability arising from a fiduciary duty is entirely independent of the debt owing from the bankrupt. The trust res is not owing to the bankrupt's estate but rather is owned by it. *Fore Improvement Corp. v. Selig,* 278 F.2d 143, 145 (2nd Cir.1960).

The Court has followed that precedent. *Bavely v. Cinoco Terminal, Inc. (In The Matter of Triple A Coal Co., Inc.),* 41 B.R. 641 (Bankr.S.D.Ohio 1984). If Banner exercised its rights of set-off when those rights did not exist, or were otherwise improper, then those set-offs or transfers may constitute preferences which may be recovered pursuant to 11 U.S.C. § 547, or which are otherwise voidable under 11 U.S.C. § 550. The Court is of the opinion that the plaintiffs' claim sets forth facts sufficient to constitute a cause of action under 11 U.S.C. § 547 and 550. That branch of Banner's motion seeking dismissal of the plaintiffs' seventh claim for relief, accordingly, is DENIED.

Banner has also moved for an order requiring the plaintiffs to provide a more definite statement in their Seventh Claim for Relief. In ¶ 73, 77, 78, 80 and 81, the plaintiffs allude to the existence of "transfers including, but not limited to, those described in paragraphs 44 and 45 of this Complaint ..." Banner correctly asserts that this allegation of the Complaint is so vague that Banner cannot reasonably be required to frame a responsive pleading. Bankruptcy Rule 7012(b); Fed.R.Civ.P. 12(c). Accordingly, the motion for more definite statement is granted, and the plaintiffs shall supplement or amend the Seventh Claim with the specifics of such additional transfers as they seek to avoid pursuant to § 547. Should they fail to supplement or amend the Seventh Claim, the Claim shall not be dismissed, but the Court shall consider evidence regarding only those transfers specifically alleged in the trial on the merits of the Claim.

## X. ELEVENTH CLAIM FOR RELIEF

■ The plaintiffs, under their eleventh claim for relief, allege that certain liens and security interests were taken by Banner in the debtor's property pursuant to an indemnification agreement with the intent to hinder, delay or defraud creditors of the debtor. The plaintiffs further allege that those liens and security interests are voidable as fraudulent conveyances pursuant to Ohio Rev.Code Ann. § 1336.07, and are otherwise subject to removal pursuant to 11 U.S.C. §§ 544(b) and 550. The plaintiffs have also requested that Banner be required to repay to the plaintiffs any payments made by the debtor to Banner pursuant to the indemnification agreement.

Banner has moved to dismiss the plaintiffs' eleventh claim for relief on the basis that there is no basis for requiring Banner to repay to the plaintiffs payments made by CL to Banner under the indemnification agreement. Banner's objection, therefore, to the plaintiffs' eleventh claim for relief is that it fails to properly set forth a claim for recovery of the payments made pursuant to the indemnification agreement.

The Court is of the opinion that the plaintiffs' claim alleges sufficient facts to con-stitute a claim under 11 U.S.C. §§ 544 and 550. The basis of the plaintiffs' cause of action is not for the recovery of payments, but rather to avoid liens and security interests granted to Banner pursuant to the indemnification agreement. The recovery of payments is a result that would follow if the plaintiffs are successful. Accordingly, that branch of Banner's motion seeking dismissal of the plaintiffs' eleventh claim for relief is DENIED.

## XI. CONCLUSION

On the basis of the foregoing findings of fact and conclusions of law, Banner's Motion to Dismiss the first, second, third, fourth, seventh and eleventh claims for relief of the plaintiffs' complaint is DENIED and the defendant has ten (10) days from the date of entry of the Order in which to respond to the plaintiffs' complaint.

Banner's Motion to Dismiss the sixth claim for relief is denied. However, Banner's Motion for More Definite Statement is granted, and within ten (10) days, the plaintiffs shall file a supplement or amendment to the Complaint, setting forth the specifics of such additional transfers as they seek to avoid. Should the plaintiffs fail to supplement or amend the Complaint, the seventh claim shall not be dismissed, but at a trial on the merits, the Court shall consider evidence regarding only those transfers specifically alleged in the existing seventh claim. Should the plaintiffs file an amendment or supplement, Banner shall respond within ten (10) days of the date of service.

An order staying discovery was entered in this case pending the resolution by this Court of Banner's Motion to Dismiss certain claims of the plaintiffs' complaint. As the Court has herein ruled on that Motion, there is no longer any purpose served by continuing the stay of discovery in this case. Accordingly, the order staying discovery in this case is hereby lifted and the parties are allowed to proceed with discovery in this case.

The stay of discovery having been lifted in this case, the remaining issues raised under PepsiCo, Inc.'s motion for reconsideration and taken under advisement by this

Court are moot and hereby are denied. Plaintiffs' motion for an order lifting the stay of discovery in this case is also moot and hereby is denied.

IT IS SO ORDERED.